UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOSEPH PEPE, III**                                       CIVIL ACTION

**VERSUS**                                                 **NUMBER: 23-1435**

**NEW YORK LIFE INSURANCE COMPANY**                        SECTION: "R" (5)

<u>REPORT AND RECOMMENDATION</u>

Before the Court is New York Life Insurance Company's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Compel Arbitration. (Rec. doc. 8). Plaintiff has filed no opposition to the motion. Having reviewed the motion and the case law, the Court rules as follows.

**I.     Background**

On March 21, 2016, Plaintiff began working for New York Life Insurance Company ("NYL"), and he signed a Partner's Employment Agreement (the "Agreement"). (Rec. doc. 8-4 at ¶5.). Plaintiff's employment with NYL was terminated sometime in 2022. (Rec. doc. 1-3).

On September 20, 2022, Plaintiff filed a "Petition for Damages" in the 22nd Judicial District Court of the Parish of St. Tammany, Louisiana. Two days later, on September 22, 2022, Plaintiff also filed a Petition for Damages Class Action Lawsuit in the same court. Then, on September 27, 2022, Plaintiff filed a Third Petition for Damages in the same court (collectively, "the Original Actions"). On October 19, 2022, NYL removed all three Original Actions to this Court. All three Original Actions are based, in part, on allegations that NYL and its employees, Sandra Gill and Ronald Bowers, retaliated against Plaintiff, an alleged whistleblower, who claimed that he raised concerns about illegal actions at NYL.

Additionally, Plaintiff alleged that NYL engaged in covert monitoring and recording of employees, covered up harassment, threats, and extortion, and filed a false fraud report with the Louisiana Insurance Department.

NYL moved to consolidate the Original Actions, and all Defendants filed a Motion to Compel Arbitration and Stay Proceedings. The District Court granted these motions in favor of all Defendants on February 7, 2023. In deciding the motion to consolidate the Original Actions, this Court concluded that all three cases arose out of Plaintiff's "employment with New York Life and his workplace experiences," and that "all three require[d] consideration of the Partner's Agreement." *See, e.g., Pepe v. Bowers and New York Life Ins. Co.,* 2:22-cv-04015-SSV-MBN (E.D. La.) (Rec. doc. 13 at 5). In deciding the Motions to Compel Arbitration and Stay Proceedings, the District Court concluded that there is a valid agreement to arbitrate and "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability. (*See id.* at 7).

Plaintiff never commenced arbitration of his claims against NYL. Instead, nearly two months after the District Court compelled Plaintiff to bring his claims in arbitration, on April 5, 2023, he filed this New Action alleging, in part, that he was retaliated against for being a whistleblower. (Rec. doc. 1-3.). Although his Complaint is near intelligible, there is substantial overlap with the Complaints in the Original Actions. For example, Plaintiff cites the same eighteen Louisiana laws that he cited in his Original Actions, although he also cites two federal statutes—Title VII of the Civil Rights Act of 1964 ("Title VII") and Title II of the Americans with Disabilities Act ("ADA"). (*Id.*). Plaintiff seeks an award of "loss wages, past present and future," as well as emotional distress damages. (*Id.*).

**II.    Law and Analysis**

2

NYL first asks the Court to dismiss this action on the basis that Plaintiff failed to follow a court order (*i.e.*, proceed to arbitration on his claims). However, this Court finds that ruling on NYL's second argument – to compel arbitration – is more practical given that the District Court ruled on near-identical issues in Plaintiff's three Original Actions.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, expresses a strong federal policy in favor of enforcing arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Safer v. Nelson Fin. Group, Inc.*, 422 F.3d 289, 294 (5th Cir. 2005). Section 3 of the Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Supreme Court has explained that the Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Moreover, "any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration." *Safer*, 422 F.3d at 294.

To determine whether to compel the parties to arbitrate, the Court must complete a two-step inquiry. *Id.* at 293. First, the Court must determine whether the parties agreed to arbitrate the disputes in question. *Id.* This determination ordinarily involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration

3

agreement." *Id.* But when the parties' agreement contains a delegation clause, the Court simply analyzes whether there is a valid agreement, and if so, whether there is "clear and unmistakable evidence" that the parties intended to arbitrate the arbitrability issue. *See Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 514 (5th Cir. 2019). Second, if the Court determines that the parties have agreed to arbitrate the dispute in question, it "then must determine 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).

The Court determines that there is a valid agreement to arbitrate and that there is "clear and unmistakable evidence" that the parties intended to arbitrate the issue of arbitrability. *See FloaTEC, L.L.C.*, 921 F.3d at 514. The agreement at issue contains the following arbitration provisions, including a provision delegating the issue of arbitrability to the arbitrator:

> a. The Partner and New York Life (**which includes New York Life**, NYLIFE Securities LLC **and** their affiliates, successors, **employees and agents**) agree that **any dispute,** claim, request for equitable relief, or controversy **arising between them**, including but not limited to those alleging wrongful or unlawful discharge or employment discrimination or harassment based on sex, race, age, disability, or status in any other group or class, or retaliation, in violation of any federal, state or local statute, regulation or rule (hereinafter "the Claim"), **as well as any dispute as to whether such Claim is arbitrable** . . . , **shall be resolved by a final and binding arbitration proceeding** administered by [FINRA] in accordance with its applicable arbitration rules ("FINRA's arbitration rules") then in effect. These rules may be found at www.finra.org.
>
> b. The following disputes and claims are not covered by this Agreement and shall therefore be resolved in any appropriate forum as required by the laws then in effect: (1) claims for workers' compensation benefits (except for claims of retaliation or discrimination), unemployment insurance, or state or federal disability insurance; (2) claims for benefits under a plan that is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); (3) matters within the jurisdiction of the National Labor Relations

> Board; and (4) any other dispute or claim that has been excluded from arbitration by applicable law that is not preempted by the Federal Arbitration Act.
>
> c. In the event that a claim is not arbitrable under FINRA's arbitration rules, or FINRA refuses to arbitrate the Claim, the Partner and New York Life agree that the Claim, as well as any dispute as to whether such Claim is arbitrable, shall . . . be resolved by a sole arbitrator in a final and binding arbitration proceeding administered by the American Arbitration Association (hereinafter "AAA") in accordance with its rules for the resolution of employment disputes then in effect. These rules may be found at www.adr.org.
>
> d. The Partner and New York Life both agree to waive any right to a jury trial with respect to any Claim covered by this Agreement.

(Rec. doc. 8-3 at 5-6) (emphasis added). Based on this language, the Court finds that there is a binding agreement to arbitrate. The agreement contains a plain arbitration provision, and, because this Court has no opposition to the motion, Plaintiff raises no legal question as to its validity. Second, the Court must determine whether the parties' agreement contains a valid delegation clause. *FloaTEC, L.L.C.*, 921 F.3d at 514 (quoting *IQ Prod. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017)). The Agreement provides that "any dispute as to whether [Plaintiff's] Claim is arbitrable . . . shall be resolved by a final and binding arbitration proceeding." (Rec. doc. 8-3 at 6). Plaintiff presents no argument or evidence contradicting the intent of this provision. There is clear and unmistakable evidence that the parties intended to arbitrate the issue of arbitrability. Because the Agreement "delegates the arbitrability question to an arbitrator, [the Court] may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. – , 139 S. Ct. 524, 529 (2019).

Lastly, the Court must consider whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. This includes "whether any federal

5

statute or policy renders the claims non-arbitrable." *Conegie*, 492 F.3d at 598 (citations omitted). Here, and again because this Court has no opposition, Plaintiff points to no federal or state law that would preclude enforcement of the arbitration agreement. Indeed, Plaintiff fails to provide any law or argument on why the Court should not compel arbitration. Accordingly, the Court recommends granting NYL's motion, compelling arbitration, and administratively closing the case pending a final decision of the arbitrator or panel.

### III. Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that New York Life Insurance Company's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Compel Arbitration (rec. doc. 8) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that this case be stayed and administratively closed pending resolution of any arbitration proceeding.

### NOTICE OF RIGHT TO OBJECT

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, on this __4th__ day of _____January_____, 2024.

_____
**MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE**